GRIGGS vs. SWIFT, surviving partner.

A contract by a partnership with an employé for personal services in the current business of the firm for one year, at a given rate per month, is dissolved by a dissolution of the firm within the year by the act of God. There can be no recovery on such contract for services never in fact rendered, but which the employé would have rendered had the surviving partner not discharged him after the dissolution.

July 31, 1889.

Contracts. Partnership. Master and servant. Nonsuit. Before Judge SMITH. Muscogee superior court. May term, 1888.

Griggs sued Geo. P. Swift, surviving partner of Geo. P. Swift & Son, on an account for salary which he alleged to be due him from January 1st to July 25th, 1887, and also for board for the same period, under a parol contract of employment for the year from September 1st, 1886, to September 1st, 1887, from which

employment he was discharged in January, 1887, without fault on his part. Defendant pleaded not indebted; also that the contract upon which the suit was founded was a special contract with the firm of Swift & Son, a firm composed of Geo. P. Swift and Geo. P. Swift, Jr., by which plaintiff was to render personal service to the firm as clerk and collector from September 1st, 1886, to September 1st, 1887, in the business of the firm; that afterward, on November 27th, 1886, the firm was dissolved by the death of Geo. P. Swift, Jr., the managing partner, and the contract was then and thereby terminated; that plaintiff was paid for his services up to the dissolution, and after the death of Geo. P. Swift, Jr., was discharged, etc.

The evidence for plaintiff tended to show that he was employed by the year from September 1st, 1886, to September 1st, 1887, at $50.00 per month and expenses. His service was to be looking after collections for the firm and visiting and reporting as to its plantations. The firm was engaged in the business of cotton warehousemen. Geo. P. Swift, Jr., died November 29th, 1886, and the partnership was thereby dissolved; after the death, no business was done except to settle up the business of the firm. Plaintiff was discharged by the surviving partner on or about the 1st of January, 1887, over his protest. He endeavored to get other employment, but could not do so until July 25th, 1887. He continually, after his discharge, tendered his services to the surviving partner. Up to May, 1887, the firm of Swift & Son kept its books open, paid employés and controlled all the cotton in its warehouse; and all cotton that was received up to September 1st, 1887, was for that firm, the firm after that date being succeeded by the firm of Swift & Hamburger, a firm which was formed several months before. Geo. P. Swift, Sr., did not notify plain-

tiff of his discharge until January, 1887, and then notified him he would have to discharge him as there was nothing for him to do. Plaintiff had no intimation he would be discharged until he was summoned to Columbus, the location of the firm, about January 1st, 1887. Up to this date, the evidence tends to show that he continued to serve firm just as he had before the death of Geo. P. Swift, Jr. Plaintiff also showed what his board would be worth for the time in question.

At the conclusion of the testimony for the plaintiff, defendant moved for a nonsuit, which was granted, and plaintiff excepted.

THOMAS W. GRIMES and PEABODY, BRANNON & HATCHER, for plaintiff.

McNEILL & LEVY, for defendant.

BLECKLEY, Chief Justice.

The facts are stated in the official report. The hiring was by the partnership, for the term of one year from September 1st, 1886, at $50 per month besides board. One of the two partners of which the firm consisted died in November, and the survivor discharged the plaintiff on the first of January. The plaintiff could obtain no other employment until the following July; and, after the year expired for which he was hired by the partnership, he brought this action, claiming the agreed compensation from the 1st of January, the time of his discharge, up to the date in July when he procured other employment, and his expenses for board during the same period.

As there is no trace in the evidence that the partnership was, by the terms of its creation, to subsist or continue after the death of one of its members, such

death wrought a dissolution and forever terminated the
partnership.   Code, §§1892, 1894.   One of the parties,
therefore, to the contract of hiring became extinct by
the act of God.

The code declares (§2871) that if performance is im-
possible and becomes so by the act of God, such impos-
sibility is itself equivalent to performance.   There being
no one after the partnership went out of existence to
receive the personal services which the plaintiff had
contracted to render as inspector of farms and collector
for the partnership, the further execution of the con-
tract was as much impossible as if the plaintiff himself
had died before or after a dissolution of the firm had
taken place.   The survivor transacted no new business
on the partnership account, but confined operations to
closing up the firm affairs.   The classification of every
contract must depend upon a rational interpretation
of the intention of the parties.   Code, §2721.   From
the very nature of a contract for the rendition of per-
sonal services to a partnership in its current business,
where nothing is expressed to the contrary, both par-
ties should be regarded as having by implication in-
tended a condition dependent, on the one hand, upon
the life of the employé, and on the other, upon the life
of the partnership, provided the death in either case
was not voluntary.   To this effect is the text of Wood
Mast. and Serv. §163 : "Where a servant is employed
by a firm, a dissolution of the firm dissolves the con-
tract, so that a servant is absolved therefrom, but if the
dissolution results from the act of the parties, they are
liable to the servant for his loss therefrom, but if the
dissolution results from the death of a member of the
firm, the dissolution resulting by operation of law, and
not from the act of the parties, no action for damages
will lie.   .   .   .   So if a firm consists of two or more

persons, and one or more of them dies, but the firm is not thereby dissolved, the contract still subsists, because one or more of his partners is still in the firm, and this is so even though other persons are taken into the firm. The test is whether the firm is dissolved. So long as it exists, the contract is in force, but when it is dissolved, the contract is dissolved with it, and the question as to whether damages can be recovered therefor will depend upon the question whether the dissolution resulted from the act of God, the operation of law or the act of the parties."

Mr. Wood's reference is to two Scotch cases which we have not seen, but the rule he deduces from them is so reasonable that we feel warranted in accepting it as law. See also Tasker *vs.* Shepherd, 6 Hurlst. & Norm. 575.

As to death of a person not a partner but a sole employer, see Yerrington *vs.* Greene, 7 R. I. 589; Wood M. & S. §§95, 158.

The case of Fereira *vs.* Sayres, 5 Watts & S. 210, s. c. 40 Am. Dec. 496, is apparently in conflict with the text of Wood as above quoted; but we are satisfied to abide by the rule laid down in Wood, though it be at the expense of differing with the learned court of Pennsylvania by whom the last named case was decided. The contract upon which the plaintiff's suit was founded having become impossible of performance by reason of death, he had no right to recover upon the same against the surviving partner for services never actually rendered, and there was no error in granting a nonsuit. Of course, the claim for board was on the same footing as that for wages.

Judgment affirmed.